IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SEDILLO ELECTRIC and
TELESFOR SEDILLO,

      Plaintiffs,

v.                                                                                  CV 15-1172 RB/WPL

COLORADO CASUALTY INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,
PEERLESS INSURANCE COMPANY, and
BAKER INSURANCE SERVICES, L.L.C.,

      Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND PLAINTIFFS' MOTION TO COMPEL**

The Defendants (collectively "Liberty Mutual") filed a motion for a protective order. (Doc. 105.) Plaintiffs filed a cross motion to compel. (Doc. 128.) Each motion is opposed and the parties scarcely agree on anything, other than that they have an ongoing dispute. The motions are now fully briefed.[1] To the extent that the parties resolved their disputes prior to this point—specifically with regard to the motion for a protective order as it relates to Request for Production ("RFP") Nos. 1 and 2 and the corresponding aspects of the subpoena duces tecum—the motion for a protective order is denied as moot. (*See* Doc. 155 at 2 (After the motion for protective order was filed, Plaintiffs' voluntarily dismissed the vandalism claim, as such, "Liberty Mutual submits that RFP Nos. 1 and 2 are no longer at issue, and that only RFP No. 3 is

---

[1] In response to the motion for a protective order, Plaintiffs' counsel asserts that I ordered that the response be filed by noon on November 21, 2016. (Doc. 134 at 2.) Counsel misunderstood my Order of November 21, 2016, directing the Defendants to file a response to Plaintiffs' opposed motion to extend time in which to respond to the motion for protective order. (Doc. 132.) Had counsel read the Order more closely, he would have seen that the expedited briefing was for Liberty Mutual to file a response to his own motion.

at issue herein.").) Having reviewed the briefing, and the record, and being otherwise advised on these matters, I grant in part and deny in part Liberty Mutual's motion for a protective order and Plaintiffs' cross motion to compel, as explained herein.

## MOTION FOR PROTECTIVE ORDER

Liberty Mutual moved for a protective order as it relates to RFP No. 3 and the corresponding aspects of the subpoena duces tecum. Because the RFP and the requests contained in the subpoena duces tecum are nearly identical, I refer to them collectively with reference to the RFP, unless otherwise noted.

Federal Rule of Civil Procedure 26(c) allows courts, for "good cause," to issue a protective order regarding discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999)).

"It is the party seeking the protective order who has the burden to show good cause for a protective order." *Dorato v. Smith*, 163 F. Supp. 3d 837, 869 (D.N.M. 2015) (quoting *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005)). The party seeking the protective order must provide the court "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quotation omitted).

RFP No. 3 reads:

> Rachel Berg's testimony established what incentive evidence exists that is relevant to incentive payments made to Steve Harkness, another Liberty Mutual adjuster. At pp. 194:23 to 195:16; 207:18 to 210:25 of her deposition, Rachel Berg testified the employee handbook probably explains how Liberty Mutual's

> Incentive Program worked. Berg Deposition, pp. 194:23 to 195:7. From January 1, 2013 to date, produce a copy of the relevant employee handbook and all documents relevant to Liberty Mutual's Variable Incentive Program ("VIP"), and any other relevant documents that show and explain how the incentive program worked for a.) Rachel Berg, b.) Steve Harkness, and c.) whoever has been adjusting the Sedillo claim from the date of Rachel Berg's March 22, 2013 denial letter to date (who also must be identified). This request includes but is not limited to actual incentives paid, the basis for the computation of the amount paid, the criteria applied for the payment, performance evaluations, performance reviews and combined ratio computations, the "QCR", Objective Settings and Performance Evaluation Forms, Financial Objectives, relevant 401k's, quarterly reports, the relevant business unit's earnings and growth targets, outcomes of reviews by quality team or manager of the files at issue, guidelines, customer service scores, teamwork and claim cultural objectives.

(Doc. 105 Ex. 3 at 4-5.)

Liberty Mutual contends that RFP No. 3 is duplicative of an RFP served and answered in state court, and thus violates the agreement to not re-serve discovery; that the RFP is vague, ambiguous, confusing, overly broad, and unduly burdensome and expensive; that the documents requested are irrelevant; that some of the documents requested are confidential and proprietary; and that the last sentence is a fishing expedition for unrelated material. To the extent that a litigation adjuster has worked on the claim since suit was filed, Liberty Mutual contends that those documents are protected by the work product doctrine and the attorney/client privilege. Additionally, Liberty Mutual asserts that it has no duty to continue investigating a claim after the claim has been denied and litigation has commenced.

Plaintiffs address only two aspects of this argument: first, Plaintiffs dispute whether an insurer bears an ongoing duty to investigate after a claim has been denied and suit has been filed; and second, Plaintiffs argue that any claim of privilege has been waived. Further, Plaintiffs contend that RFP No. 3 "requested the entire personnel file of Rachel [B]erg and other relevant adjusters." (Doc. 134 at 9.) Plaintiffs agree that they are "satisfied with the production made as to Liberty training and adjusting program," but maintain all other aspects of the RFP. (*Id.* at 9-10.)

As an initial matter, I note that Plaintiffs' failure to respond to Liberty Mutual's arguments in the motion for protective order can be considered a concession of that position. *See Pueblo of Pojoaque v. New Mexico*, --- F. Supp. 3d ---, 2016 WL 6405927, *62 n.17 (D.N.M. Sept. 30, 2016). However, under the circumstances presented by this case, I will address the merits and the arguments.

When this case was pending in state court, Plaintiffs propounded state case RFP No. 28, which reads:

> At pp. 194:23 to 195:16; 207:18 to 210:25 of her deposition, Rachel Berg testified the employee handbook probably explains how Liberty Mutual's Incentive Program worked. Berg Deposition, pp. 194:23 to 195:7. From January 1, 2013 to date, produce a copy of the relevant employee handbook and all documents relevant to Liberty Mutual's Variable Incentive Program ("VIP"), and any other relevant documents that show an explain how the incentive program worked for a.) Rachel Berg, b.) Michael Westby, c.) Steve Harkness, d.) whomever was the person(s) who managed and/or evaluated Steve Harkness from June 30, 2012 to his denial letter of August 6, 2015 (who must also be identified), and e.) whomever has been adjusting the Sedillo claim from the date of Rachel Berg's March 22, 2013 denial letter to date (who also must be identified). This request includes but is not limited to actual incentives paid, the basis for the computation of the amount paid, the criteria applied for the payment, performance evaluations, performance reviews and combined ratio computations, the "QCR", Objective Settings and Performance Evaluation Forms, Financial Objectives, relevant 401k's, quarterly reports, the relevant business unit's earnings and growth targets,, outcomes of reviews by quality team or manger [sic] of the files at issue, guidelines, customer service scores, teamwork and claim cultural objectives.

(Doc. 105 Ex. 4 at 3-4.) Liberty Mutual responded to that RFP in substantially similar fashion as it responded to RFP No. 3 in this case. I agree that the RFPs are nearly identical. Further, the parties "agreed not to reissue any discovery requests which were answered while the case was pending in state court." (Doc. 77 (Clerk's Minutes for the Initial Scheduling Conference on July 12, 2016).) Plaintiffs essentially reissued this RFP, in violation of the parties' agreement.

Beyond these obvious deficiencies, it is unclear what documents Liberty Mutual produced in response to the state RFP or RFP No. 3.

4

This case arises out of alleged hail damage to a roof that, according to Plaintiffs, would cost $27,973.44 to repair. (Doc. 128 at 7.) Plaintiffs also assert a claim for punitive damages resulting from the allegedly bad faith handling of the hail claim.

While I agree that the claims file is relevant and appears reasonably calculated to lead to the discovery of admissible evidence, many of Plaintiffs' requests as stated are overly broad, unduly burdensome, disproportionate, and request information subject to attorney-client privilege and work product doctrine. Therefore, I will limit Plaintiffs' requests and grant in part Liberty Mutual's motion for protective order.

There are two general categories of information sought in this RFP: financial information and information about the file/adjusters after litigation commenced.

Liberty Mutual essentially argues that Plaintiffs are not entitled to documents or information about how the claim was handled created after the filing of the lawsuit as they contain information protected by attorney client and work product privileges. Both parties cite to *Barela v. Safeco Insurance Company of America*, 2014 WL 11497826 (D.N.M. Aug. 22, 2014) (unpublished), for guidance on this point.

While it is generally understood that privilege does not attach to an insurer's investigatory file on an insured's claim before a final decision is made, *id.*, that is not the case here. Neither side asserts that Liberty Mutual failed to produce the claims file through the date of denial. *Lindley v. Life Investors Insurance Company of America* is instructive on this point:

> Fed. R. Civ. P. 26(b)(3) requires that a document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produce after litigation was reasonably anticipated. It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product. Likewise, anticipation of litigation

>is presumed unreasonable under the Rule before a final decision is reached on the claim. The converse, of course, is presumed for documents produced after claims denial. To overcome these presumptions, the insurer must demonstrate, by specific evidence proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation and not to arrive at a (or buttress a tentative) claim decision.

267 F.R.D. 382, 399 (N.D. Okla. 2010). In *Barela*, Judge Yarbrough noted that "'courts have adopted a nuanced approach to the anticipation-of-litigation prong of work-product analysis' and focus on 'whether specific materials were prepared in the ordinary course of business, or were principally prompted by the prospect of litigation.'" 2014 WL 11497826, at *4 (quoting 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (3d ed.)).

It seems that the real question is whether Liberty Mutual had an affirmative duty to continue investigating the claim after denial and the commencement of litigation. If Liberty Mutual had such a duty, then all documents related to the file after suit was filed would still be produced in the ordinary course of business. If, however, Liberty Mutual had no such duty, then any documents related to handling the claim during suit would be covered by the work-product doctrine and attorney client privilege.

Plaintiffs cite to *Sinclair v. Zurich American Insurance Company*, 129 F. Supp. 3d 1252 (D.N.M. 2015); the combination of *Jessen v. National Excess Insurance Company*, 776 P.2d 1244 (N.M. 1989), and *American National Property and Casualty Company v. Cleveland*, 293 P.3d 954 (N.M. Ct. App. 2013); and *Barela* for the collective proposition that insurers have a duty to continue investigation of claims once the claim has been denied and suit initiated. (Doc. 134 at 3-9.)

In *Sinclair*, I held that an insurer has a duty to act in good faith even when suit has been filed and that the insurer carries a continuing obligation to "reassess its initial decision to deny coverage based upon information received subsequent to the initial decision, even if that information is received after suit is filed." 129 F. Supp. 3d at 1257. Plaintiffs twist this holding and attempt to contort the case to fit their narrative, arguing that "[e]xisting New Mexico law recognizes that insurance companies have a continuing duty to investigate and pay claims after litigation commences." (Doc. 134 at 4.)

The insurer's continuing obligation to act in good faith and its obligation to reassess its initial decision based on subsequently received information is not tantamount to an obligation to affirmatively investigate a claim. Indeed, the insurer's obligation to reassess is couched in the passive terms of "based upon information received"—that is, the insurer does not have to go find additional information to bolster or undercut its initial determination.

*Jessen* stands for the proposition that an insurer's obligation to investigate and render a determination on a claim does not terminate when suit begins: the insurer must still investigate and render an initial decision even if litigation has commenced. In *Jessen*, the insurer relied on a third-party's investigation as the reason for delaying its determination. 776 P.2d at 1248. In *Cleveland*, the New Mexico Court of Appeals reaffirmed that an insurer must conduct an investigation of the claim that is "adequate to determine whether its position is tenable," even though the investigation does not need to be perfect. 293 P.3d at 958.

Plaintiffs construe these cases, together, as standing for the proposition that an insurer has a continuing obligation to investigate the claim after the claim has been denied. Neither case speaks to an insurer's conduct after the claim has been denied. Even under the broadest reading, *Jessen* and *Cleveland* do not create such a duty.

Finally, in *Barela*, Judge Yarbrough cited *Lindley* for the proposition that a claims file does not become privileged merely because the case has entered litigation. 2014 WL 11497826, at *4-5. In *Barela*, as in the other cases, the underlying claim had not been resolved when the bad faith case was brought. That is not the case here: Liberty Mutual resolved and denied the hail claim in March 2013, months before this case was filed.

Plaintiffs' argument that *Barela* stands for the proposition that post-litigation claims files are never covered by work-product is unavailing and deceptive. The factual circumstances of *Barela* differ in the only material way from those of this case: the claim in this case was resolved and denied, such that anything in the claims file after litigation could only have been prepared in the course of litigation and not in the regular course of business.

Pursuant to *Lindley*, and taking note of the Privilege Logs produced on March 7, 2014 and July 6, 2016 (Doc. 105 Ex. 3 at 10-14), I agree with Liberty Mutual that they had no continuing obligation to affirmatively investigate the hail claim after the claim had been denied and litigation commenced. As such, any claims adjustment after the claim was denied was not conducted in the ordinary course of business and is protected by attorney-client privilege and the work product doctrine. Liberty Mutual's motion for protective order is granted as to the identity of the litigation adjuster, if any, on the hail claim and any request for incentive information related to the time period after the denial.

The other broad category of information sought is financial information. Both parties cite extensively to Judge Yarbrough's well-reasoned opinion in *Barela* for guidance on this matter. I agree that *Barela* is instructive.

In *Barela*, the Court limited disclosure of claims manuals, training manuals, and written procedural materials relevant to the handling of uninsured and underinsured motorist claims to

8

those documents provided to adjusters handling these claims in New Mexico for the year of the accident at issue and the two succeeding years. 2014 WL 11497826, at *6. The Court also limited the production of personnel information for each of the claims adjusters handling the file to "documents that pertain to their educational and professional background, qualifications, training, job performance as it relates to handling uninsured/underinsured claims, and compensation structure only if it is tied to losses on uninsured/underinsured motorist claims, and licensing." *Id.* at *10. Judge Yarbrough further ordered the parties to enter a confidentiality agreement to protect this information. *Id.*

Liberty Mutual contends that it should not be required to produce financial information, but that any such information should be limited to information made public in New Mexico in 2013 and 2014.

Plaintiffs, on the other hand, cite to *Sherrill v. Farmers Insurance Exchange*, 374 P.3d 723 (N.M. Ct. App. 2016), for the proposition that incentive evidence and other financial information is relevant and not subject to confidentiality or privilege. Plaintiffs fail to disclose that *Sherrill* is a wrongful termination/retaliatory discharge case in which Sherrill, a Farmers adjuster, refused to comply with Farmers' policy of early settlement in automobile cases. While incentive information was certainly relevant to Sherrill's claims against Farmers, *Sherrill* is inapposite.

This case is more like *Barela* than *Sherrill*. Plaintiffs indicated that they are satisfied with Liberty Mutual's disclosure of training materials, so the motion for protective order is denied as moot on that point. As to earnings information, Liberty Mutual's motion for protective order is granted in part and denied in part: Liberty Mutual will disclose all financial information made publicly available in New Mexico in 2013, 2014, and 2015. As it relates to the compensation and

incentive structure for Rachel Berg, Liberty Mutual's motion for protective order is granted in part and denied in part: Liberty Mutual will disclose documents that pertain to compensation structure for Berg only if it is tied to losses on property claims.

The remaining arguments as to over breadth, relevance, ambiguity, confusion, burdensomeness, and proportionality are overruled.

### MOTION TO COMPEL

Plaintiffs moved for an order compelling production of "hail storm evidence defendants refused to produce in response to":

> a.) The identities and location of the present adjuster and "litigation adjuster" on the hail claim and relevant incentive evidence as to Rachel Berg and those adjusters relevant only to the hail claim requested in RFP No. 3 . . . ;
> b.) The production of all the claims adjusting evidence on the hail claim from the date the claim was reported in January 2013 to date that should have been produced pursuant to RFP No. 2 in the State case, . . . , and in the initial production with an appropriate privilege log.
> c.) An order that Liberty cannot refuse to produce requested evidence on the basis of the inadequate privilege log provided . . . that was attached to Defendants' Initial Disclosure produced to Plaintiffs on July 6, 2016.
> d.) A judicial declaration rejecting defendants' false justification for refusing to disclose relevant evidence because it has no "continuing duty to investigate after a claim is denied." . . .
> e.) A clear declaration of Plaintiff's [sic] rightful scope of discovery so that Plaintiffs can pose the questions and require the production of evidence described in the *Exemplar Duces Tecum* to appropriate Rule 30B6 witnesses and the "litigation adjuster" . . . to avoid facing a time consuming and unnecessary motion for protective order.

(Doc. 128 at 2-3 (footnotes omitted).)

Pursuant to Federal Rule of Civil Procedure 34, a party must either produce documents responsive to an RFP or "state with specificity the grounds for objecting to the request, including the reasons" and "state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2). "[A]n evasive or incomplete disclosure, answer, or response

10

is to be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(3). General objections to a request for production are insufficient and will be overruled. *See Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 12-13 (D.D.C. 2008).

Federal Rule of Civil Procedure 26(b)(1) allows discovery of any nonprivileged matter that is "relevant" to any party's claim or defense, provided such discovery "is relevant to any party's claim or defense and proportional to the needs of the case." At the motion to compel stage, the proponent of the motion bears the initial burden of showing that the information sought is relevant. *Metzger v. Am. Fid. Assurance Co.*, No. CIV-05-1387-M, 2007 WL 3274934, at *1 (W.D. Okla. Oct. 23, 2007) (unpublished) (citations omitted).

Request a.) is addressed completely above in the section on the motion for protective order. Liberty Mutual is not required to disclose the identity of the "litigation adjuster," if any, and is only required to disclose compensation information for Rachel Berg and other relevant adjusters as it relates to losses on property claims. The motion to compel is therefore granted in part and denied in part.

Request b.) is also fully addressed in the above section on the motion for protective order. Liberty Mutual is not required to produce the claims file for the period after the claim was denied and suit was filed. To the extent that Liberty Mutual has not produced the claims file from the period up through March 22, 2013, the date of denial, Liberty Mutual is ordered to do so. The motion to compel is thus granted in part and denied in part.

Request d.) is likewise fully addressed above—there is no affirmative obligation for an insurer to continue investigation a claim after the claim has been denied and suit commenced. The insurer is still required to reassess its position in light of newly produced evidence. The motion to compel is denied on this point.

As to Request c.), Plaintiffs are essentially challenging the objections—that is, the privilege log—served by Liberty Mutual. Pursuant to Local Rule 26.6, when a party is served with objection to interrogatories, requests for production or inspection, or requests for admission, the party must proceed with a motion to compel within twenty-one days of service of the objection. In this case, Plaintiffs filed their motion to compel on November 18, 2016, and are challenging the privilege log—essentially objections to State case RFP No. 13, originally produced on March 11, 2015—that was produced in the federal case on July 6, 2016. (Doc. 128 Ex. 4.) Plaintiffs argue that a new privilege log was required in the federal case pursuant to Local Rule 26.3. This seems disingenuous in light of the parties' agreement not to re-serve discovery that had already been conducted. Nonetheless, the time to object to the privilege log has long since lapsed and any objection has been waived. Accordingly, the motion to compel is denied on this point.

Finally, as to Request e.), Plaintiffs seek a judicial declaration as to the scope of discovery for purposes of a Rule 30(b)(6) deposition. I have already determined that insurer's do not have a continuing, affirmative obligation to investigate a claim after the claim has been denied and suit has been filed. To the extent that Plaintiffs' seek to depose a litigation adjuster or other Rule 30(b)(6) designee about Liberty Mutual's handling of the claim after the claim was denied and suit was filed, about compensation structure not related to losses on property claims, or about the vandalism claim, the motion to compel is denied. Further, to the extent that the subpoena duces tecum seeks to abrogate any previously asserted privilege, the motion to compel is denied.

In their Reply brief, Plaintiffs introduce a new argument and contend that Liberty Mutual is defying the Scheduling Order, which expressly allows for a four hour deposition of Rachel

Berg's supervisor and at least one Rule 30(b)(6) deposition. (Doc. 163 at 7-8.) New arguments advanced in reply briefs cannot be relied upon unless the nonmovant is offered an opportunity for surreply. *See, e.g.*, *Beaird v. Seagate Tech. Inc.*, 145 F.3d 1159, 1164-65 (10th Cir. 1998). No surreply has been requested or will be allowed in this instance, and thus no arguments, advanced for the first time in the Reply, will be considered.

Plaintiffs may notice and take the depositions specified in the Scheduling Order, subject to the above limitations, and may specifically request information from the Rule 30(b)(6) designee about Liberty Mutual's consideration of the expert reports and what, if any, reassessment of the claim occurred when new evidence was submitted to Liberty Mutual. Again, Liberty Mutual did not and does not have a continuing, affirmative obligation to investigate the claim after the claim was denied and suit was filed. Rather, Liberty Mutual has an obligation to, in good faith, reassess the determination when presented with new evidence.

## CONCLUSION

As discussed above, Liberty Mutual's motion for protective order is granted in part and denied in part. Liberty Mutual did not and does not have an affirmative obligation to continue investigating the claim after the final claims decision has been issued, but does have an obligation to, in good faith, reassess the claims decision when presented with new evidence. Plaintiffs' motion to compel is granted in part and denied in part. Plaintiffs may take any depositions specifically allowed for in the Scheduling Order, provided that Plaintiffs operate within the parameters described herein. Any depositions must occur within fourteen days from the date of entry of this Order.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.