IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SEDILLO ELECTRIC and
TELESFOR SEDILLO,

      Plaintiffs,

v.                                                        CV 15-1172 RB/WPL

COLORADO CASUALTY INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY, and
PEERLESS INDEMNITY INSURANCE COMPANY,

      Defendants.

**ORDER IMPOSING SANCTIONS**

In an order that resolved four discovery motions filed by the parties, I identified several misstatements of fact made by Plaintiffs' counsel, Eric Sedillo Jeffries. (Doc. 251 at 2-4.) I issued an order to show cause to Mr. Jeffries because of my concern that he had violated Federal Rule of Civil Procedure 11 and the New Mexico Rules of Professional Conduct by making false representations in two of the motions. (Doc. 252.) Mr. Jeffries filed a response to the order to show cause, and I held a hearing on April 13, 2017. This Order will explain the basis for the sanctions imposed upon Mr. Jeffries.

On behalf of Plaintiffs, Mr. Jeffries filed a motion he titled "Motion to Complete the Deposition of Julian Leyba." (Doc. 206.) Mr. Leyba is a fact witness in this case, and Mr. Jeffries took Mr. Leyba's deposition on January 26, 2017. According to the motion, Mr. Jeffries "suspended" the deposition when it became obvious that exhibits that Mr. Jeffries brought to the deposition were not readable and were inaccurate as to two locations. (*Id*. at 1-2.) Because the deposition had been suspended, Mr. Jeffries sought a court order to "properly complete . . . the

partial deposition" of Mr. Leyba. (*Id.* at 1.) Mr. Jeffries states later in the motion that he "promptly terminated" Mr. Leyba's deposition when the two mistakes were recognized and he "insisted upon the most accurate of testimony." (*Id.* at 5.)

In its response to the motion, Liberty Mutual disputed that Mr. Jeffries had suspended or terminated the deposition. (Doc. 219 at 8-9.) Liberty Mutual accused Mr. Jeffries of blatantly misstating facts and submitting a sham affidavit from Mr. Leyba in an attempt to show good cause to take a second deposition from Mr. Leyba. (*Id.*) Liberty Mutual specifically identified as "Misstatement of Fact No. 1" Mr. Jeffries' claim that he had suspended the deposition, and as "Misstatement of Fact No. 4" Mr. Jeffries' claim that he promptly terminated the deposition. (*Id.*)

In his reply, Mr. Jeffries asserted that nothing he stated in the motion "was proven false or inaccurate." (Doc. 240 at 3.) While Mr. Jeffries spent several pages of the reply contesting the other assertions made by Liberty Mutual, he never addressed Liberty Mutual's claim that Mr. Leyba's deposition was completed on January 27, 2017, and that the deposition was not suspended or terminated. (See *id.* at 3-4.)

As noted in my order resolving the discovery motions, Mr. Jeffries never suspended or terminated Mr. Leyba's deposition. (Doc. 251 at 3-4.) Instead, after Mr. Jeffries and counsel for Liberty Mutual completed two rounds of questioning Mr. Leyba, Mr. Jeffries suggested to Mr. Leyba that he read and sign the deposition so Mr. Jeffries could resolve an issue about "a different address." (Doc. 206 Ex. 2 at 8 (J. Leyba Dep. 62:5-8).)

Federal Rule of Civil Procedure 11(b)(3) requires an attorney to certify that the factual contentions in a motion "have evidentiary support." Further, the New Mexico Rules of Professional Conduct prohibit a lawyer from asserting a fact in a proceeding when there is no

2

basis in fact for doing so, and from making a false statement of fact to a court or failing to correct a false statement previously made to a court. NMRA Rule 16-301; NMRA Rule 16-303. Mr. Jeffries made false statements in the motion when he stated that he had suspended or terminated the deposition and that he needed to complete the partial deposition of Mr. Leyba. Liberty Mutual specifically challenged these facts in its response to the motion, and Mr. Jeffries had an opportunity in the reply to correct these false statements. He not only did not do so, he compounded the deception by maintaining that nothing he said in the motion was false or inaccurate. When I asked Mr. Jeffries at the hearing why he did not admit the misstatements in his reply, he candidly stated that he did not think it was that important to do so.

Unfortunately, these are not the only misrepresentations made by Mr. Jeffries: he also made false statements in a motion to extend the deadline for Plaintiffs' insurance expert to supplement his opinion on the bad faith actions of Liberty Mutual. (Doc. 168.) First, Mr. Jeffries asserted that Liberty Mutual's refusal to identify the litigation adjuster who handled Plaintiffs' claim after its denial on March 22, 2013, is contrary to the scheduling order that I entered on July 22, 2016. (*Id.* at 3-4.) A cursory review of the order contradicts Mr. Jeffries' claim. The scheduling order allows Plaintiffs to depose Steve Harkness, his supervisor, Rachel Berg's supervisor, and to take at least one Rule 30(b)(6) deposition. (Doc. 78 at 1.) The scheduling order does not discuss the identity of a litigation adjuster, much less require Liberty Mutual to identify him/her and provide for that individual to be deposed.

Second, Mr. Jeffries also asserts that the deadline should be extended because "on January 3, 2017, Liberty raised an entirely new defense of 'wear and tear' that cannot be found in its policy." (Doc. 168 at 4.) As Liberty Mutual pointed out in its response, its expert David Disko discussed "wear and tear" in his first inspection report, which was provided to Mr. Jeffries

on July 6, 2016. Confronted with these facts, Mr. Jeffries now admits that "wear and tear" was raised as an issue by Liberty Mutual on July 16, 2016. (Doc. 254-1 at 6.)

Rather than simply admit that he made false statements, Mr. Jeffries' response was a curious amalgam of misdirection, partial contrition, obfuscation and defiance. His response begins, rather inexplicably, by addressing whether he should have withdrawn his request to depose the litigation adjuster after receiving the order on discovery motions that I issued on March 9, 2017. While I appreciate Mr. Jeffries' recognition that he could have done so, that was not an issue I identified in my order resolving the discovery motions or the order to show cause. Mr. Jeffries next apologized for using the terms "complete," "suspend," and "terminate" in describing the conduct of the deposition, claiming they were inadvertent errors. He claimed that he inadvertently used the wrong date when discussing the "wear and tear" defense. He again claimed inadvertent error in arguing that the scheduling order allowed the deposition of the litigation adjuster. He also attempted to justify his claim that Liberty Mutual was violating the scheduling order by failing to identify the litigation adjuster by arguing that his motion to extend deadlines was filed before he reviewed my discovery order dated March 9, 2017 – a strange argument since all he needed to do was review the scheduling order entered on July 22, 2016, well before he filed his motion to extend.

Mr. Jeffries concluded his written response by claiming that "[i]n my opinion the mistakes resulted from my imprecise writing." (Doc. 254-1 at 6.) This conclusion was flatly contradicted when Mr. Jeffries stated in court that he did not admit in his reply to the motion to complete Mr. Leyba's deposition that he did not suspend or terminate the deposition because he did not think it was that important.

Contrary to the view of Mr. Jeffries, being honest about the facts of a case is important. Courts have a responsibility to protect the public by ensuring that attorneys licensed to practice law in New Mexico comply with applicable standards of professional conduct. *In re Chaves*, 299 P.3d 403, 408 (N.M. 2013). "Attorneys are officers of the court, and our system of justice only works if courts can rely on attorneys to fulfill their duty of candor to the tribunal." *Id*. Attorneys have an "obligation to exhibit the personal honesty and integrity expected of lawyers and to refrain from dishonesty and other conduct prejudicial to the administration of justice." *Id*. If Mr. Jeffries had made only one misstatement of fact, and promptly rectified it when called to his attention, a claim of inadvertent error would be more plausible. Multiple misrepresentations, all in his clients' favor, that are never acknowledged or corrected, completely undercut Mr. Jeffries' claims of inadvertent error.

District courts have discretion to sanction a party or an attorney who abuses the judicial process, perpetrates a fraud on the court, or fails to comply with local or federal procedural rules, and such authority is both statutory and inherent. *Chambers v. NASCO, Inc*., 501 U.S. 32, 50-51 (1991); *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). There are three potentially appropriate avenues for awarding Liberty Mutual its attorneys' fees incurred in responding to the motion to take a second deposition from Mr. Leyba: Federal Rule of Civil Procedure 37(a)(5); 28 U.S.C. § 1927; and inherent authority, *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-67 (1980) (discussing the court's inherent authority to impose sanctions "in response to abusive litigation practices"). An award of attorney's fees does not appear appropriate pursuant to Federal Rule of Civil Procedure 11(c)(2) because the matter arose sua sponte and not on motion of Liberty Mutual. Rule 11 does not allow a sua sponte award of attorney fees. *Wright v. CompGeeks.com*, 429 F. App'x 693, 698 (10th Cir. 2011) (unpublished).

Rule 37(a)(5)(B) provides that the court may, after giving an opportunity to be heard, require the attorney who filed an unsuccessful motion to pay opposing counsel's "reasonable expenses incurred in opposing the motion, including attorney's fees," but clarifies that such payment must not be ordered "if the motion was substantially justified or other circumstances make an award of expenses unjust." Section 1927 of Title 28 to the United States Code provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may, as sanction, be required "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Finally, courts have inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. This power arises upon a finding that counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)).

In this instance, Mr. Jeffries filed a motion based on materially false statements of fact. The motion to take a second deposition from Mr. Leyba was not substantially justified, Mr. Jeffries acted in bad faith when filing the motion, and the motion constitutes an unreasonable multiplication of the proceedings. Liberty Mutual is therefore entitled to its reasonable costs, expenses, and attorneys' fees incurred in responding to the motion. Liberty Mutual shall within fifteen days file a motion for attorneys' fees and costs incurred in responding to the motion to take a second deposition from Mr. Leyba. Because billing records can contain privileged information, the motion shall include affidavits from counsel and redacted time records to support the request. Mr. Jeffries may file a response as provided by Local Rule 7.4(a). D.N.M.LR-Civ. 7.4(a).

For the false statements made in the motion to extend deadlines, I will exercise my inherent authority and impose a sanction in the amount of $150.00 payable to counsel for Liberty Mutual to compensate Liberty Mutual for some of the attorneys' fees incurred due to Mr. Jeffries' misstatements. *See Montoya v. Albuquerque Pub. Schs.*, Civil No. 1-173 WJ/DJS, ECF No. 109 at 5-6 (D.N.M. Feb. 4, 2003) (unpublished).

Mr. Jeffries shall also read the New Mexico Rules of Professional Conduct and the Creed of Professionalism of the State Bar of New Mexico, and shall file an affidavit by May 1, 2017, stating that he has done so.

Any similar misconduct by Mr. Jeffries may result in more severe sanctions, up to and including a recommendation of dismissal of this case with prejudice and the referral of Mr. Jeffries to the Disciplinary Board of the New Mexico Supreme Court and the Committee on Admissions and Grievances of the Bar of the United States District Court for the District of New Mexico.

IT IS SO ORDERED.

                                                                                            _____
                                                                                            William P. Lynch
                                                                                            United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.